Carr, J.
I shall not examine the point discussed with great earnestness and ability at the bar, whether Mercer's judgement against Beale, under all the circumstances of the case, be within the influence of the statute declaring that after five years from the qualification of an executor or administrator, no action of debt shall be brought, or scire facias issued, on any judgement obtained ag'ainst the testator or intestate ? It is unnecessary to consider the point, because the judgement of the chancellor upon it, was against the appellee, and he took no appeal from it, but was satisfied with the decree.
The only question which I think it material to consider, is that respecting the interest: did the chancellor err in refusing to give interest on the whole judgement from its date until final payment? It was a judgement for damages, and did not give interest. It was recovered in June 1792; and *195 an execution was sued out upon it in tlie same year, which proved ineffectual. From that time till 1816, when this bill was filed, no step was taken; the judgement remained a judgement in damages, carrying no interest as a part of the judgement. The defendant at any time during period, by paying up the amount of the judgement, £2500. with the costs, would have extinguished the judgement: the plaintiff, by issuing his execution, could never have coerced more than the £ 2500. and costs. This, then, was the existing demand ; and if during the time that it stood upon the judgement and execution thereon, the payment of the sum demanded would have extinguished the whole, it would seem to follow, that a payment of any sum less than the whole, would extinguish the debt to the extent of the sum paid. It appears, that between 1802 and 1809, various payments were made; leaving, of the principal judgement and costs, only a balance of 614 dollars. This sum the chancellor has decreed to Mercer’s administrator with interest from the date of the judgement. It is contended that, on this bill, filed in 1816, long after the payments, a court of equity ought to have treated this judgement exactly as if it had carried running interest upon its face ; computing interest on the judgement to the time of the payments, and applying the payments first to the discharge of the interest. I cannot think so. Suppose the payments had equalled the amount of the judgement and costs ; could this bill have been sustained claiming to have a re-settlement, and the payments so applied as to give interest on the whole judgement from its date? This, I suppose, would hardly be contended for. It is the unquestionable right of a debtor owing two debts, to direct to which of them any payment he may make shall be applied; but here such direction would have been absurd ; there was but one debt; every payment must have been just as clearly and necessarily applicable to that, as if the debtor had said, “ this money is paid towards your judgement against me;” and as that judgement was one principal sum bearing no in *196 terest, every hundred pounds paid towards it lessened that .... . m -r- . principal by so much. True, it the creditor at any time s^ou^ choose to bring an action or (in a proper case) file a bill to enforce this judgement, he might in his second judge-Qr c]ecree recover interest; but this could only be on such portion of the judgement, as had not been extinguished by prior payments; it could not unsettle those payments, or alter, in t-he least, their application. 1 think, therefore, that the chancellor was right, and that his decree should be affirmed.
Tucker, P. The appellant complains, that by the decree of the court of chancery, his claim has been reduced from 7510 dollars due in January 1809, to 614 dollars, by the refusal of interest upon his judgement; while the appellee, claiming the protection of a provision of the statute of limitations, objects that a decree for any portion of the demand should have been rendered against him. These present the points on which the decision of this court is called for. I shall take them up in the order in which they have been just stated,
1. As to the appellant’s title to interest upon his judgement. That a court of equity will under circumstances give interest on a judgement sounding only in damages and not carrying interest in terms, cannot be denied. The cases of Beall v. Silver and Chamberlayne v. Temple, 2 Rand. 401. 384. cited at the bar, are decisive authorities upon that point. Nor does the allowance of interest depend •merely upon the fact, in those cases, that there were fraudulent conveyances thrown in the way of the creditor, which proved a barrier to the collection of his debt. I think it may be more broadly stated, that where a creditor would be entitled, in debt upon his judgement, to recover interest, but is forced for any cause, to resort to equity for his redress, he ought to have the same measure of redress there, unless •there be special reasons rendering such redress unreasonable or unjust. In this case the complainant has been compelled *197 to come into equity, instead of suing at law upon his judgement 5 and we must, therefore, inquire what he would have been entitled to recover at law, in an action of debt upon the judgement.
That in an action of debt upon a judgement, the may, in the shape of damages, recover interest upon his demand, is a proposition too plain to have required proof. It is one of the functions of such an action,—one of its main designs; and in England, where even on contracts bearing interest in terms, the judgement of the court carries it down only to its own date, it is a most important remedy for a creditor, who, for years after his judgement, has been baffled in his attempts to render it available. Formerly, indeed, it would seem that interest was only computed to the time of the action brought; a practice condemned by lord Mansfield in Robinson v. Bland, 2 Burr. 1085. where he said, that, in justice, interest should be carried down to actual payment, but as that could not be, it should come as near it as possible, that is, to the judgement, when the demand is completely liquidated. But as by the english practice, even as corrected, the interest stopped short of justice, it was permitted to be recovered in an action of debt upon the judgement, where the creditor had been unreasonably delayed in the recovery of his money. Yet these actions have nevertheless been looked upon with a very watchful eye, being considered as vexatious and oppressive; per Grose, J. in Entwistle v. Shepherd, 2 T. R. 79. The resorting to a new suit, instead of pursuing the various executions given by the law for enforcing the first judgement, would indeed merit the reprobation of the courts; and the holding up a judgement for years, with a view to the recovery of accumulated interest in a new action, would certainly give the creditor no claim to the exercise of the discretionary powers of a court and jury in his favor. To modify the expression of the lord chancellor, in reference to carrying down interest beyond the report of the master, “ if it was once understood to be of course, that after liqui *198 dation of the debt, the accumulated sum would carry m- , , , . . terest, those who ought to be most active in prosecuting the [demand] would then become negligent,” in the expectation of interest; and would lie by until by the accumulatjQn defendant would be ruined. It maybe said, indeed, that he can at all times absolve himself by payment; but where the judgement does not carry interest in terms, he very naturally looks to the delay as the forbearance of his creditor, and waits until the issue of an execution calls upon him to make payment. In the practice of this country, it may be safely affirmed, that no defendant who delays the voluntary discharge of a judgement, and awaits the visit of the officer, conceives that he is thereby subjecting himself to a new demand for accumulated interest, upon a judgement which carried no interest. Be this as it may, while it is readily conceded, that interest on a judgement not carrying interest may be given, it is as confidently affirmed, that it is not matter of course. The authorities and the reason of the thing concur, in sustaining this proposition. If interest is not allowable upon rent, where there is sufficient distress upon the premises, because the landlord always has his remedy in his own hands, (Dow v. Adams, 5 Munf. 51.) there would seem to be equal reason for refusing it to a creditor, who, instead of enforcing his judgement by execution, when his debtor is full handed and his property easily reached, proceeds to harass him by a new action upon a judgement. So, if a judgement be rendered of assets quando acciderint, the supposition at the time of the judgement, is, that there is nothing to pay, and therefore no one to make payment; and thus, there being no default, no damages can be given; for damages always imply a previous wrong. Hence, in a case like this, interest was refused in a court of equity; Deschamps v. Vanneck, 2 Ves. jr. 716.
The authorities concur in considering interest, in an action of debt upon a judgement, as matter of discretion, not as matter of right in all cases. Nay more, it is matter for the *199 jury, under the direction of the court, not matter for the decision of the court, independent of the jury. For the demand is for damages by occasion of the detention of the debt, and damages are always matter of assessment by the jury. And though the interest is the measure of those damages, and usually determines the amount of them, yet interest is one thing and damages another. Interest is matter of contract: damages are assessed for a tort or wrong done in withholding the debt; they are given for breach of contract, not in pursuance of it. Hence, the court will not undertake to assess those damages, or to compute the interest without the intervention of that tribunal whose peculiar province it is to assess damages for a tort of whatever description. Hence, too, though it is the practice, in actions upon bills and notes where there is judgement by default, instead of executing writs of inquiry, for the court to refer it to a master to see what is due for principal and interest; yet, in an action of debt on a judgement, this will not be done; for, as lord Kenyon said, in Nelson v. Sheridan, 8 T. R. 395. “it should be left to a jury to consider whether any and what damages should be given. Perhaps they may think that in this case no damages at all ought to be given.” The case of Roe v. Apsley, 1 Sid. 442. had indeed been decided otherwise (against the opinion of the chief justice, 2 Wms. Saund. 108. in notes) but that case must now be considered as overruled. In the case of Deschamps v. Vanneck, the lord chancellor, moreover, speaking of the practice in equity as to this matter, declares, that upon inquiry he found that the master [in chancery} never taxed interest upon a judgement; and further, that he had found upon inquiry, that no interest is computed upon a judgement, in an action upon such judgement at law.
Nor is it merely not a matter of course that interest shall be allowed upon a judgement; it is often matter of serious speculation, whether it will be allowed in the shape of damages or not. I am certainly not aware of any case, in which interest has been allowed in the shape of damages. *200 upon a judgement for damages in tort; as for slander, battery or trespass. Such a case, it would be difficult, I imagine, to find in the english books. So far from such allowance, it is, to say the least, at this time exceedingly doubtful, whether interest in damages can even be allowed, in an action upon a judgement on matter of contract, where the original cause of action did not carry interest. In the exchequer chamber, such interest is refused on an affirmance on a writ of error; 3 Price, 250. 6 Taunt. 244. And in an action of debt upon a judgement on a contract not carrying interest, a judge at his chambers, in the case of Butler v. Stoveld, 1 Bing. 368. 8 Moore, 412. made an order to stay proceedings in the action, on payment of the amount recovered, with costs, but without interest.
It may not be amiss to observe, moreover, that, in England, it is now established as a general principle, that interest is allowed by law only upon commercial securities, or in those cases where there has been an express promise to pay interest, or where such promise is to be implied from the usage of trade or other circumstances; Higgins v. Sargent, 2 Barn. & Cres. 348. 9 Eng. C. L. R. 101. Like opinions have ^ been expressed by lord Ellenborough in 1 Camp. 50. 12 East, 410. and 15 East, 223. And in Higgins v. Sargent, Holroyd, J. says, “ Independently of these authorities, I am of opinion, upon the principles of the common law, that interest is not payable upon a sum certain payable at a given day” [interest not being contracted for], “ The action of debt was the specific remedy appropriated by the common law for the recovery of a sum certain. Now, in that action, the defendant was summoned to render the debt, or shew cause why he should not do so. The payment of the debt satisfied the summons, and was an answer to the action. If this, therefore, had been an action of debt” [it was covenant for a sum certain] “ the payment of the principal sum would have been a good defence, because the interest is no part of the debt, but is claimed only as damages, resulting from the non-payment of the debt. *201 Where, indeed, the interest becomes payable by virtue of a contract, express or implied, then it becomes part of the debt, and it would be no answer to the action of debt, for the defendant to shew, that he had paid the principal sum only.” So in the action of debt upon this judgement: the original writ (I speak of the matter according to the original common law forms of proceeding) would have commanded the payment of the exact sum due by the judgement, and the payment of that sum, without interest, would have been an answer to the action and satisfaction of the writ; for in the original writ and process in debt, there are no damages laid. 3 Black. Comm. Append. III. The damages are for the first time set forth in the declaration.
From what I have said, and from the authorities adduced, I think it will clearly appear, 1. that interest may be given, in the form of damages, upon many demands not carrying interest in terms, and among others upon a judgement in a matter of contract; but, 2. that this is not matter of course, but of discretion, to be exercised by the jury, under the superintendence of the court. And if these propositions are true, then it is obvious, that until an action of debt is brought upon a judgement not carrying interest, the plaintiff’s demand against the defendant is for the amount of that judgement alone; or, at most, that there is a possible, contingent, potential demand for interest, to be recovered in the shape of damages, if in a future action upon the judgement, such damages should be allowed.
Let us now recur, for a moment, to the character of the demand in this case. It is not a demand of interest upon so much of the said debt as has been unpaid, which a jury might allow and the court of chancery has properly allowed; but it is a demand, that all the payments which have been made towards satisfaction of the judgement, should be now converted, by the decree of the court, into payments not in part of an actual, subsisting, ascertained and recognized demand, but in part of this potential, uncertain, and contested demand of interest; a demand which was not ad *202 -mitted, was not ascertained, would certainly be contested, and might be adjudicated against the. creditor, whenever he should asser.t it. Such an use of the doctrine of the application of payments, it is believed, can neither find a prer jn tjje pastj nor wou]¿ j£ f,e ]jbely to be followed as a precedent for the future. The difficulties also to which such a construction would lead, are too formidable to be overlooked. If the doctrine be true, then although every cent of a judgement has been paid, the creditor may nevertheless sue for the amount, convert the payments to the interest and resuscitate the exanimate judgement. The consequence is, that the real estate of a decedent, which was only bound for the specific sum, and could never be responsible for damages, is, by this magical operation, still held bound for the original amount, provided the accumulation of interest has absorbed all -the payments. The executor, too, after he has paid off the amount of the original judgement, finds he was paying interest while he thought he was paying principal. He finds the debt of record undiminisbed, because his payments are withdrawn from the principal, which is a debt of record, to be applied to these speculative* potential damages, which certainly are not a debt of record; and, having been thus, by construction, made to pay a less than simple contract debt (for it is a debt merely in posse), when he really supposed he was paying a. record debt (the principal in the judgement), he is charged with a devastavit, and made to answer to other creditors for the misapplication of the funds.
’ Nor is this all. It cannot be affirmed, that interest can be included in an execution on a barren judgement. -If then the execution is paid off through the officer, the debt .is discharged ; but, according to the doctrine.now advanced, if paid off voluntarily, the payments must first be considered as payments of interest. If this be so, then the result will be, that-no prudent man,—certainly no prudent executor, will ever pay off a judgement, except through the officers of the law j and thus, the .decedent’s estate will be wasted in costs, commissions and sales under execution.
*203 Upon the whole, I am clearly of opinion, that interest was properly refused, except upon the unsatisfied portion of the judgement.
I shall only add that our statutes ean have no influence upon the question ; 1. because it is probable, that the case of debt upon a judgement was not in the contemplation of the legislature, or designed to be comprehended by the word contract in the statute of 1804-5, 1 Rev. Code, ch. 128. § 80. p. 508. and 2. even if it had been, the subject of interest is still left discretionary with the jury; and the foregoing reasoning is as applicable as ever.
We come next to consider the defence under that clause of our statute which was first introduced at the revisal of 1792, being then the 57th section of the statute of wills, but inserted in the statute of limitations at the revisal of 1819,1 Rev. Code, ch. 128. § 17.
The application of this clause to the present case was first denied, upon the ground that the judgement at law was anteriour to the enactment of the provision, and was not therefore affected by it. Had the defendant relied upon the 5th section of the statute of limitations, the objection would indeed have been conclusive, for it has been decided, and no doubt very properly, that this provision had not a retroactive operation, and did not embrace judgements previously obtained. Day v. Pickett, 4 Munf. 104. Had it been construed otherwise, a judgement ten years old at the date of the statute, would have been absolutely barred by it, and the right would have been annihilated, by an utter privation, not by a mere limitation, of the remedy. But in the construction of the provision in question, no infraction of the right will necessarily ensue, though the judgement be anteriour to it, provided we construe it to require the qualification of the executor to be posterior. In the 5th section, the judgement is made the terminus, or point of time, from which the limitation shall be reckoned. In this clause, the qualification of the executor is made the terminus. Now it is manifest, that, if we fix the terminus *204 posterior to the statute, whether that terminus be the judgement or the qualification of the executor, the creditor will always have the full time allowed by the statute for enforcing his right. Thus, in this case 5 as the qualification was after the statute, the creditor had more than five years after the passing of it, within which to assert his remedy. On the other hand, if the terminus be anteriour to the statute (which might have been the case under the 5th section, had it been considered as retroacting upon anteriour judgements) the right itself would have been infringed, in every case where the limitation had expired before the passing of the act. Construing the 17th section, then, (as I do) as retroacting on the judgement, only in case of the qualification of executors subsequent to the act, it seems to me, that the legislative intention is effectuated, while an invasion of private right is sedulously avoided.
The object and intention of this statute, having been made a subject of much commentary, I will offer very succinctly my views upon the subject. The 5th section of the statute, though certainly designed originally, to meet the cases of judgements running out of date, and perhaps those cases only, yet is broad enough in its terms to reach the case of judgements abated by death, and which were sought to be revived by or against the representatives of decedents. But the legislature, I presume, thought that clause insufficient for the protection of executors and administrators, on whom the law imposes the duty of taking notice of judgements, wherever rendered in our numerous courts. The time of ten years was too long, and moreover there was a class of cases not within the 5th section: I mean judgements on which executions had issued, but were returned no effects; such cases were not within that provision; Gee v. Hamilton, 6 Munf. 32. To remedy these two evils, the other provision was introduced,—shortening the time to five years, in the case of executors, and moreover extending the bar to all judgements whatever, even to those in which the presumption of payment was rebutted by the return of no *205 effects on an execution. Since this act, no judgement can be revived, or be the foundation of an action of debt, against the executor, after the expiration of five years, unless the persons entitled were non compos &tc. No promise of payment, no assumpsit or acknowledgment, could have the effect of removing the bar. Such assumpsits may serve as the foundation of a new action, or may take a debt out of other clauses of the statute, but not out of those which limit the right of reviving judgements by deht or scire facias. Day v. Pickett, before cited.
But how then is the law as to the heir? It is contended, that this clause applies only to the executor, and does not reach the case of the heir, who can only protect himself under the 5th section, after ten years have elapsed, It struck me as singular, that where a judgement against a defendant abated by his death, it could not be enforced against his executor after five years, but might be enforced against the heir, by scire facias and elegit, at any time within ten years. For it is obvious, that the statute which gave the elegit, subjected, by that writ, the personalty as well as the realty to the creditor’s demand : and the cases upon it have decided, that if, upon an elegit, it appears to the sheriff that there are goods and chattels sufficient to satisfy the debt, the sheriff ought not to proceed to extend the lands. 2 Bac. Abr. Execution, C. 2. p. 711. 2 Inst. 395. Hence it would seem to have been the design of the statute, to charge the realty by the elegit, only in aid of the personalty, or in the event of the personalty proving deficient. Yet by the provision of the statute in question, the personalty would seem to be protected, while the realty is left to be proceeded against without its aid. Upon looking into the books upon this subject, however, I think the difficulty vanishes; for it has been expressly decided, in Panton v. Hall, Carth. 107. that no scire facias to revive a judgement will lie against the heir, until a nihil has been returned against the executor; and this opinion of lord Holt is recognized as the law of the subject, 2 Wms. Saund. 72. o. p. If it be so, then the *206 clause in question, in protecting the executor from the scire facias after five years, is a shield also to the heir, as it ought tobe.
I think, therefore, that, if this were the case of an ordinary demand against the executor and heir of a decedent, the plea of this statute would avail either of them; and I am moreover of opinion, that if the demand against Nor-borne Beale in reference to the personalty, could be considered' as a demand against him in the character of distributee, to compel him to refund, he would in that character be entitled tb resort for the defence of the portion of the estate in his hands, to the plea of this statute; since the claim would in effect be against him through the executor. But, I apprehend, such is not the character of this suit. A cursory view of a few facts in the case, will prove this. In June 1792, the judgement, which is the foundation of the present suit, was rendered. Immediately after the judgement, a fieri facias issued upon it, which was returned, “ no property to be found, but what is under a' deed of trust to N. Burwell and others for the payment of debts therein expressed.” This deed of trust was executed in March 1792, during the pendency of the suit for Mercer's demand, and about the time of the judgement, Beale left the country. By this deed of trust, Beale conveyed to trustees, all the debts, dues and demands, due or to become due to him; and his one fourth part of Providence Forge, to be secured by them, and afterwards sold, in trust to pay certain specified debts; and then such other debts, due before the date of the deed, as Beale should acknowledge under his hand and seal, or as B. Holmes, after Beale's death, should certify under his hand and seal, to be justly due, excluding, in express terms, all other debts. The terms of this trust, however it may have been designed, would render the conveyance void as to creditors, if the nature of the property conveyed was such that it could have been reached by an execution. The retaining a full power over the fund, the excluding from participation any creditor unless the debtor *207 should acknowledge the sum due, and the express exclusion of all other debts from the benefit of the trust, while, on the one hand, it utterly negatived the idea that Mercer was one of the cestuis que trust, was calculated to hinder and delay, if not to defraud, those creditors who had not favor with the debtor. It is not unlike the case in 2 Johns. 565. where the conveyance was set aside in favor of creditors, whose demands were not secured. If .such be the character of the deed upon its face, then this court I conceive must pronounce it void, even though fraud is not alleged in the pleadings: in Bayard v. Hoffman, 4 Johns. 450. there was no such allegation.
In this case, however, the conveyance is of debts due &c. and an interest in a landed estate which is not very distinctly described, and the ascertainment of which seems to have been rendered useless by Norborne Beale’s declaration that the funds in his bands were ample to pay whatever the plaintiff was entitled to recover. Now, it is true that according to the english law, bonds, bank bills and the like evidences of debt, cannot be taken by execution, because they are said to be choses in action and are not assignable; Ca. Temp. Hardw. 53. But in Virginia bonds are assignable, and even if transferred without assignment and by mere delivery, the right to them passes to the transferee. I am, therefore, by no means prepared to deny or affirm, that the bonds of a defendant can bo taken in execution. Still less am I prepared to say, that a debtor may transfer an immense estate to trustees, in money, bonds, bills, stock and other such intangible funds, and that they cannot be reached by bill in equity. The opinion of chancellor Kent, in the case before cited of Bayard v. Hoffman, is decidedly in favor of the aid of a court of equity to a creditor so situated; and, sustained by his opinion, and by the three cases on which he relies, though they have been certainly questioned by various dicta of english judges, I incline to think, that where a creditor is in pursuit of his demand, and the debtor transfers his choses in action, money, slock or *208 other funds, which cannot be reached by execution, to trustees f°r his own benefit, leaving no property out of which the debt can be made, the creditor is entitled to demand the . .... . . assistance ot equity in getting at the property, ihis opinjQn jg further sustained, I think, by the provision of our statute, which subjects every estate held in trust, to the demands of the creditors of the cestui que trust.
In this case, then, immediately on the return of the execution, no effects, except what are covered by a deed of trust, Mercer had a right to file his bill in equity against the trustees, demanding payment of his demand, after satisfying the demands secured by the deed. The death of Beale did not affect this right. The issue of his execution had given Mercer a lien on the equitable interest, which could not be affected by that event; and though, upon general principles, in such a suit, the executors were necessarily parties, yet the demand would not have been against them but against the trustees. And such, in fact, I conceive to be the actual state of this case. To the trustees, the plea of the 57th section of the statute of 1792 would have been of no avail, and in relation to this matter Norborne Beale stands in their shoes, as he has received the trust property. The plea of that statute, therefore, did not avail him.
' On the whole I am opinion that the decree is altogether right, and must be affirmed.
Cabell, J. said, he dissented from his brothers, as to the question respecting interest: that he thought, interest ought to be computed and allowed on the judgement from its date, and the payments applied, as the appellant claimed they ought to be. But he did not enter into the discussion of the point.
Decree affirmed.